UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

VIKKI A. o/b/o K.J.M.,[1]

                          Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

_____

DECISION & ORDER

20-CV-1497MWP

**PRELIMINARY STATEMENT**

Plaintiff Vikki A. ("plaintiff") brings this action on behalf of her minor son K.J.M., pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Children's Supplemental Security Income Benefits ("SSI").  Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 13, 15).  For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and complies with applicable legal standards.  Accordingly,

---

[1]  Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for

judgment on the pleadings is denied.

**DISCUSSION**

I.       **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's

determination is supported by substantial evidence in the record and whether the Commissioner

applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004)

("[i]n reviewing a final decision of the Commissioner, a district court must determine whether

the correct legal standards were applied and whether substantial evidence supports the

decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also*

*Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo*

whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's

conclusions are supported by substantial evidence in the record as a whole or are based on an

erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C.

§ 405(g), a district court reviewing the Commissioner's determination to deny disability benefits

is directed to accept the Commissioner's findings of fact unless they are not supported by

"substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to

any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is

defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

(1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise."  *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A child is disabled for the purpose of SSI if he or she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i). When assessing whether a claimant is disabled, the ALJ must employ a three-step sequential analysis.  *See* 20 C.F.R. § 416.924; *see also Miller v. Comm'r of Soc. Sec.*, 409 F. App'x 384, 386 (2d Cir. 2010).  The three steps are:

(1)     whether the child is engaged in substantial gainful activity;

(2)     if not, whether the child has a medically determinable impairment or combination of impairments that is severe such that it causes more than minimal functional limitations; and

(3)     if so, whether the child's impairments or combination of impairments meet, medically equal, or functionally equal a presumptively disabling condition listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings").

*See* 20 C.F.R. §§ 416.924(b)-(d).

3

In determining whether a child's impairments or combination of impairments meet, medically equal, or functionally equal one of the Listings, the ALJ must evaluate the child's functioning across the following six domains of functioning:

(1)     acquiring and using information;

(2)     attending and completing tasks;

(3)     interacting and relating with others;

(4)     moving about and manipulating objects;

(5)     caring for oneself; and

(6)     health and physical well-being.

*See id.* §§ 416.926a(b)(1)(i)-(vi).  To be functionally equal, the impairment must result in a finding of "marked" limitations in two domains of functioning or a finding of "extreme" limitations in at least one domain of functioning.  *See id.* at § 416.926a(a).

A "marked" limitation is one that is "'more than moderate' but 'less than extreme'" and that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities."  *Id.* at § 416.926a(e)(2)(i); *see also Spruill ex rel. J.T. v. Astrue*, 2013 WL 885739, *5 (W.D.N.Y. 2013) ("[a] marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the child's] ability to function independently, appropriately, effectively, and on a sustained basis") (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)). An "extreme" limitation is "more than marked" and one which "interferes very seriously with [a child's] ability to independently initiate, sustain or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).

4

## II.     The ALJ's Decision

In his decision, the ALJ followed the required three-step analysis for evaluating childhood disability claims.  (Tr. 10-25).[2]  Under step one of the process, the ALJ found that K.J.M. had not engaged in substantial gainful activity since March 8, 2018, the application date.  (Tr. 13).  At step two, the ALJ concluded that K.J.M. had the severe impairments of head injury, dissection of vertebral artery, anxiety disorder, and posttraumatic stress disorder ("PTSD").  (*Id.*).  At step three, the ALJ determined that K.J.M. did not have an impairment or combination of impairments that met or medically equaled one of the Listings.  (*Id.*).

In addition, the ALJ concluded that K.J.M. did not have an impairment or combination of impairments that functionally equaled one of the Listings.  (Tr. 13-25).  In reaching this conclusion, the ALJ evaluated K.J.M.'s impairments across the six domains of functioning.  (Tr. 16-25).  Specifically, the ALJ concluded that K.J.M. suffered from less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, caring for himself, and health and physical well-being.  (Tr. 16-20, 22-25).  The ALJ also concluded that K.J.M. had no limitations in the domain of moving about and manipulating objects.  (Tr. 20-22).  Accordingly, the ALJ found that K.J.M. is not disabled.  (Tr. 25).

## III.    Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that her son is not disabled is not supported by substantial evidence and is the product of legal error.  (Docket # 13-1).  Specifically, plaintiff maintains that the ALJ's determination that K.J.M. has less than marked

---

[2]  References to page numbers in the Administrative Transcript (Docket ## 10-11) utilize the internal Bates-stamped pagination assigned by the parties.

limitations in the domains of attending and completing tasks and caring for oneself is not

supported by substantial evidence.  (Docket # 13-1 at 9-14).  Because these are the only

functional domain findings challenged by plaintiff, the Court's analysis addresses only the

functional domains of attending and completing tasks and caring for oneself.

IV.     **Analysis**

      A.     **Attending and Completing Tasks**

            "The domain of attending and completing tasks principally entails an assessment

of the degree to which a child can 'focus and maintain . . . attention, and . . . begin, carry

through, and finish . . . activities.'" *Spruill ex rel. J.T. v. Astrue*, 2013 WL 885739 at *9 (citing

20 C.F.R. § 416.926a(h)).  The regulations provide that school-age children should be able to

focus their attention in order to follow directions, remember and organize their school materials,

and complete classroom and homework assignments.  20 C.F.R. § 416.926a(h)(2)(iv).  In

addition, they should be able to concentrate on details and avoid careless mistakes.  (*Id.*).  They

should also be able to change activities or routines without distracting themselves or others, and

stay on task and in place when appropriate.  (*Id.*).  Children in this age group should be able to

sustain attention in order to participate in group sports, engage in independent reading, and

perform household chores.  (*Id.*).  They should also be able to complete a transition task, such as

being ready for the school bus, changing clothing after gym class, and changing classrooms

without extra reminders or accommodation.  (*Id.*).

            When evaluating a child's level of impairment, an ALJ must consider all relevant

evidence, including evidence from medical sources, such as pediatricians, psychologists, and

therapists.  *See* 20 C.F.R. 416.924a(a).  Additionally, the ALJ "must consider evidence from

nonmedical sources, including parents and school employees." *Taneshia G. o/b/o K.T.D. v. Comm'r of Soc. Sec.*, 2022 WL 138607, \*4 (W.D.N.Y. 2022) (citing 20 C.F.R. § 416.924a(a)(2)). "Such evidence includes 'teacher questionnaires, teacher checklists, group achievement testing, and report cards.'" *Id.* (quoting 20 C.F.R. 416.924a(b)(7)(iii)). Additionally, the ALJ should gather and consider "any reports that the [claimant's] school may have that show the results of formal testing or that describe any special education instruction or services . . . or any accommodations provided in a regular classroom." *See* 20 C.F.R. 416.924a(a)(2).

As noted above, the ALJ concluded that K.J.M. had "less than marked" limitations in attending and completing tasks. (Tr. 18-19). In making this determination, the ALJ considered opinion evidence submitted by non-examining state psychologist M. Momot-Baker, PhD, and non-examining state pediatrician B. Stouter, MD. (*Id.* (citing Tr. 78-88)). In that opinion, Stouter and Momot-Baker concluded that K.J.M.'s impairment in the domain of attending and completing tasks was less than marked. (Tr. 84). According to the state consultants, although record evidence contained reports that K.J.M. struggled due to poor focus, a questionnaire completed by his school psychologist Beth Cornwell Crawford[3] suggested that he had at most slight problems in this domain, primarily due to distractibility. (*Id.*). The ALJ found this opinion "most persuasive," concluding that it was supported by objective medical evidence in the record, including K.J.M.'s most recent pediatric and psychiatric records.[4] (Tr. 16, 17-19).

---

[3] The ALJ and the state consulting physicians both suggest that this questionnaire was completed by K.J.M's teacher. (Tr. 18, 84). Yet, review of the document suggests that, other than one section that was completed by the school nurse, it was completed primarily by the school psychologist. (Tr. 193-200).

[4] In a single conclusory sentence, plaintiff suggests that this opinion cannot constitute substantial evidence to support the ALJ's decision because it was completed by non-examining sources and was stale. (Docket # 13-1 at 14). I disagree. *See Sarah H. o/b/o A.H. v. Saul*, 2021 WL 2451528, \*3 (W.D.N.Y. 2021) ("[t]he mere passage of

The ALJ also considered K.J.M.'s school records, which demonstrated that although K.J.M. had difficulty completing some of his academic tasks in a timely manner, he generally was performing at or approaching grade level in all subjects and consistently displayed effort in class participation.  (Tr. 18 (citing Tr. 192-200, 240-43)).  The ALJ acknowledged that K.J.M. established psychiatric treatment following a traumatic dog attack and that he reportedly had sleep difficulties, trouble with focus and concentration, and experienced irritability.  (Tr. 14, 18).  The ALJ also considered Crawford's observations that K.J.M. needed prompting and encouragement to remain on task and that he performed best when tasks were broken down.  (Tr. 18 (citing Tr. 192-200).  Despite these difficulties, Crawford opined that K.J.M. demonstrated only slight problems in activities related to this domain.  (Tr. 195).

The ALJ also considered an evaluation conducted by Speech and Language Pathologist Amy Cross, M.S., CCC-SLP.  (Tr. 18 (citing Tr. 721-22)).  During that evaluation, K.J.M. "sustained great focus and stamina," was "hard-working," and demonstrated "strong conversational skills and . . . a wonderful sense of humor."  (Tr. 721).  Cross concluded that K.J.M. had average receptive and expressive language skills but was moderately delayed in articulation and opined that he would benefit from speech therapy to improve articulation, word-finding, and social skills.  (Tr. 722).

The ALJ also reviewed K.J.M.'s recent pediatric treatment notes, which documented that he was achieving average grades, although he reportedly had difficulty completing his homework.  (Tr. 18 (citing Tr. 1495)).  According to the ALJ, the record also

---

time does not render an opinion stale[;] . . . [a] medical opinion based on only a part of the administrative record may still be given weight if the medical evidence falling chronologically before and after the opinion demonstrates substantially similar limitations and findings") (internal quotations omitted).

established that K.J.M. was able to sustain concentration sufficient to engage in board games,

video games, reading, and Tae Kwon Do classes.  (Tr. 18).

Plaintiff identifies several notations in the record, primarily her own reports

regarding K.J.M.'s limitations (*see, e.g.*, Docket # 13-1 at 10-11 (citing Tr. 56, 61-62, 69, 691,

890-91, 1007, 1441, 1444), which suggest that K.J.M. does have some difficulties in this domain.

(Docket # 13-1 at 10-11).  Of course, resolution of conflicting evidence is solely within the

purview of the ALJ, and the "relevant question is not whether there might be some evidence in

the record supporting plaintiff's position, but rather whether substantial evidence supports the

ALJ's decision."  *Sarah H. o/b/o A.H. v. Saul*, 2021 WL 2451528 at *8; *see Keough o/b/o JAMT

v. Comm'r of Soc. Sec.*, 2020 WL 4504988, *3 (W.D.N.Y. 2020) ("[c]laimant does not develop

any arguments specifically attacking the ALJ's analysis of the evidence[;] [r]ather, his argument

boils down to his belief that the evidence weighed more heavily in favor of a marked limitation

in this domain").  Plaintiff's challenge to the ALJ's determination with respect to this domain

amounts to nothing more than disagreement with the ALJ's weighing of the evidence and does

not warrant remand.  *See Bertina K. o/b/o T.J.S. v. Comm'r of Soc. Sec.*, 2022 WL 3370808, *3

(W.D.N.Y. 2022) ("[u]nder the substantial evidence standard of review, it is not enough for

[p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the

evidence in the record could support her position[;] [s]ubstantial evidence 'means – and means

only – such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion'") (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)); *Sarah H. o/b/o A.H.*,

2021 WL 2451528 at *8 ("[i]n sum, plaintiff is asking the [c]ourt to second guess the ALJ's

weighing of the evidence, which is not the [c]ourt's role"); *Wilson o/b/o J.J.W. v. Comm'r of

Soc. Sec.*, 2020 WL 3447800, *5 (W.D.N.Y. 2020) ("[w]hile [p]laintiff may disagree with the

9

ALJ's conclusions in this domain, her mere disagreement with the ALJ's findings does not warrant remand").

Review of the ALJ's decision demonstrates that he appropriately evaluated conflicting evidence concerning K.J.M.'s limitations in this domain and that he adequately explained how he resolved those conflicts. Moreover, I find that the ALJ's determination that K.J.M. suffers from less than marked limitations in this domain is well-supported by the record, including the opinions of the non-examining state consultants and the questionnaire from K.J.M.'s school psychologist, who indicated that K.J.M. only suffers from slight problems in activities related to this domain. *See Rashawn Y. v. Comm'r of Soc. Sec.*, 2022 WL 4121382, \*5 (W.D.N.Y. 2022) ("[plaintiff's teacher] only assessed a serious problem in carrying out multi-step instructions, but otherwise noted that plaintiff demonstrated less serious problems in all other activities relating to attending and completing tasks[;] . . . [t]he ratings by [the teacher] supported the ALJ's finding of 'less than marked' limitations in this domain"); *Ximora B. o/b/o J.Y.S.B. v. Kijakazi*, 2022 WL 2275671, \*2 (W.D.N.Y. 2022) ("[i]t is well settled that findings of slight or obvious problems are not inconsistent with a finding of 'less than marked' limitations"); *Candice M. o/b/o L.B. v. Comm'r of Soc. Sec.*, 2022 WL 624064, \*5 (W.D.N.Y. 2022) ("[i]n concluding [c]laimant has a less than marked limitation[] in this domain, the ALJ properly relied on evidence in the record including [state consultant's] opinion, teacher questionnaires, school records, and [p]laintiff's testimony; therefore, substantial evidence supports the ALJ's determination"); *Keough o/b/o JAMT v. Comm'r of Soc. Sec.*, 2020 WL 4504988 at \*4 ("[claimaint's teacher] did not assess 'a serious problem' in any area [of this domain]"); *Wilson o/b/o J.J.W. v. Comm'r of Soc. Sec.*, 2020 WL 3447800 at \*4 ("the [decision] reflects that the

ALJ considered [the teacher's] opinion, [and] characterized it as providing only none to slight limitations in the relevant functional domains").

###### B.       Caring for Oneself

The caring for oneself domain evaluates "how well [the child] maintain[s] a healthy emotional and physical state, including how well [the child] get[s] [his or her] physical and emotional wants and needs met in appropriate ways; . . . cope[s] with stress and changes in [their] environment; and whether [the child] take[s] care of [his or her] own health, possessions, and living area." 20 C.F.R. § 416.926a(k).  School-age children should be independent in most self-care activities such as bathing and dressing and should be able to recognize which activities they can perform and those with which they may need assistance.  20 C.F.R. 416.926a(k)(2)(iv).  They should also be able to identify circumstances which make them feel good and those which make them feel bad.  (*Id.*).  School-age children should begin to develop an understanding of right and wrong, as well as acceptable and unacceptable behavior.  (*Id.*).  Children in this age range should begin to imitate known-adult behavior, begin to demonstrate consistent control over their own behavior, and be able to avoid unsafe behaviors.

The ALJ found that K.J.M. has less than marked limitations in this domain.  (Tr. 22-23).  In so finding, the ALJ acknowledged record evidence documenting that K.J.M. suffered from sleep difficulties due to nightmares and night terrors, impulsive behaviors, panic attacks, and separation anxiety.  (*Id.*).  Additionally, the ALJ noted that Crawford observed that K.J.M. had "some minor difficulties relating to [his] peers."  (Tr. 23 (citing Tr. 198)).  According to the ALJ, these difficulties appeared related to the dog attack K.J.M. experienced during the summer of 2017, and subsequent medical records suggested that the issues largely resolved.  (Tr. 23).  For instance, records from 2018 suggested that K.J.M. was doing "great," and his

mother declined recommended mental health medications and further care management services.

(*Id.* (citing Tr. 890, 979)).  Pediatric care visits from 2019 suggested that K.J.M.'s sleep

difficulties were well-controlled with melatonin and that he was generally healthy.  (Tr. 23

(citing Tr. 1495-99)).  The ALJ further noted that records suggested that K.J.M. did not have any

physical impairments that inhibited his ability to care for his personal needs and that none of his

treatment providers had identified any concerns regarding his ability to care for his personal

needs or engage in age-appropriate activities.  (Tr. 22-23).  Finally, the ALJ considered the

opinion by Stouter and Momot-Baker that K.J.M. suffered from less than marked limitations in

this domain.  (Tr. 23 (citing Tr. 78-88)).

Plaintiff maintains that the ALJ's analysis of this domain was flawed because the

ALJ overlooked relevant evidence and improperly focused on K.J.M.'s physical ability to engage

in activities of self-care.  (Docket # 13-1 at 11-14).  I disagree.  As an initial matter, although the

focus of this domain is not an individual's physical ability to perform self-care tasks, "the

domain does consider how well [a child] cares for his own health, possessions, and living area."

*Bertina K. o/b/o T.J.S. v. Comm'r of Soc. Sec.*, 2022 WL 3370808 at *4.  In his decision, unlike

in *Maria E. o/b/o J.M.A. v. Comm'r of Soc. Sec.*, 2021 WL 3861422 (W.D.N.Y. 2021) – a case

upon which plaintiff heavily relies – the ALJ did not improperly focus solely upon K.J.M.'s

physical capacity to engage in self-care.  Rather, he properly discussed K.J.M.'s overall capacity

to perform and manage self-care tasks, while considering evidence related to K.J.M.'s emotional

health, including his sleep difficulties, anxiety, and difficulty relating to peers.  *See Bertina K.*

*o/b/o T.J.S.*, 2022 WL 3370808 at *4 ("the ALJ here did not rely solely on [c]laimant's physical

ability to perform self-care tasks in determining [c]laimant had less than marked limitation in the

domain of caring for [one]self[;] [h]ere, the ALJ properly considered [c]laimant's ability to care

for his own needs as one part of his overall assessment of [c]laimant's abilities in this domain").

Moreover, I disagree with plaintiff's assertion that the ALJ improperly

overlooked or ignored evidence relevant to this domain such that remand is warranted.  (Docket

# 13-1 at 12-13).  "[I]t is well-settled that the ALJ need not mention, in the written decision,

every shred of evidence, assessment, or diagnosis found in the record, and an 'ALJ's failure to

cite specific evidence does not indicate that such evidence was not considered.'"  *Rashawn Y. v.*

*Comm'r of Soc. Sec.*, 2022 WL 4121382 at *4 (quoting *Brault v. Soc. Sec. Admin*, 683 F.3d 443,

448 (2d Cir. 2012)).  In any event, the evidence that plaintiff suggests was overlooked primarily

consists of reports of K.J.M.'s struggles in the immediate aftermath of the dog attack (Docket

# 13-1 at 12 (citing Tr. 687-88, 691-92, 763, 866, 890-91)) – difficulties which the ALJ

considered but determined had subsequently lessened in severity or resolved – and plaintiff's

testimony and more recent reports of K.J.M.'s continued symptoms (Docket # 13-1 at 12-13

(citing Tr. 23, 52, 56, 59, 61-62, 65, 75, 1007, 1012, 1444, 1466)) – reports which the ALJ

considered but determined were overstated and not supported by the overall record (Tr. 15-16).

The ALJ's finding of less than marked limitations in this domain is supported by

substantial evidence in the record, including Crawford's questionnaire response documenting at

most slight problems in this domain, the opinion of Stouter and Momot-Baker that K.J.M. had

less than marked limitations in this domain, and the educational and medical records that

suggested that K.J.M.'s sleep, anxiety, and anger difficulties diminished over time and with

treatment.  Again, the heart of plaintiff's challenge to the ALJ's determination is simply a

disagreement with the ALJ's weighing of conflicting evidence, which, as discussed above, is not

a basis for remand.

14

## **CONCLUSION**

This Court finds that the Commissioner's denial of SSI was based on substantial

evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket**

**# 15)** is **GRANTED**.  Plaintiff's motion for judgment on the pleadings **(Docket # 13)** is

**DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**


_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge


Dated:  Rochester, New York
        September 15, 2022